**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger**

Civil Action No. 17-cv-02770-MSK-STV

**DWIGHT IVAN SHORTRIDGE, JR.,**

    Plaintiff,

v.

**KRAIG BROWNLOW and
WILLIAM DELAY,**

    Defendants.

_____

**OPINION AND ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to Motions of Defendants Kraig Brownlow ("Officer Brownlow") **(# 155)** and William Delay ("Officer Delay") **(# 156)** for Summary Judgment, to which no responses were filed.

This action arises from Mr. Shortridge's arrest at a Discount Tire store. He brings the action *pro se*[1]. The operative pleading in this case is Mr. Shortridge's Third Amended Prisoner Complaint **(# 68)**, setting forth four claims under 42 U.S.C. § 1983.[2] The Court previously

---

[1] Mr. Shortridge initiated this case without the assistance of an attorney. Accordingly, the Court reads his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). Such liberal construction is intended merely to overlook technical formatting errors and other defects in Mr. Shortridge's filings. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Indeed, although he is not represented by counsel, Mr. Shortridge must still comply with procedural rules and satisfy substantive law to be entitled to relief. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2008).

[2] Claim 1 asserts the liability of Officers Brownlow and Delay for the violation of Mr. Shortridge's right to freedom from excessive force in effecting his arrest. Although Mr. Shortridge initially pled this claim as arising under the Eighth Amendment, it was later recharacterized as a Fourth Amendment violation. **(# 112 at 5 n.2)**.

dismissed all claims except Mr. Shortridge's excessive force claims against Officer Brownlow and Officer Delay (Claim 1). **(# 112)**. Officers Brownlow and Delay seek summary judgment on the remaining claim contending that Mr. Shortridge has not and cannot make a *prima facie* showing that their actions constitute a Fourth Amendment violation. Alternatively, Officer Brownlow seeks summary judgment on Claim 1, arguing that it is barred by judicial estoppel and the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994).

Although Mr. Shortridge has not responded to the motions, the Court does not reflexively grant them. The Court must still examine whether the evidence of record demonstrates that there are no triable issues of fact. *Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002). Because Mr. Shortridge's Third Amended Prisoner Complaint **(# 68)** is verified[3], the Court accepts his well pleaded allegations as true and where they conflict with evidence that is presented by the Defendants, construes the evidence most favorably to Mr. Shortridge.[4] In addition to the Third Amended Complaint and arguments in the motions, the Court has considered the evidence presented in excerpts of Mr. Shortridge's deposition testimony **(# 155 at Ex. 2-6, # 156 at Ex. 2-8)**, the Arvada Police Department's Internal Case File, which includes Officer Brownlow's Affidavit in Support of Warrantless Arrest **(# 155-1, # 156-1)**, and a transcript of a hearing in Mr. Shortridge's underlying criminal case where he pleaded guilty to various offenses arising out of the subject incident **(# 155-5)**.

---

[3] The Court may treat a complaint submitted by a *pro se* litigant as an affidavit and use it as evidence on summary judgment where, as here, the complaint is sworn, dated, and signed under penalty of perjury pursuant to 28 U.S.C. § 1746. **(# 68 at 39)**.

[4] The Court recounts the facts in the light most favorable to Mr. Shortridge, the nonmoving party. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002). To the extent there are factual disputes, the Court notes them in the discussion.

## FACTS

### Stipulated Facts

The parties agree that while Mr. Shortridge was having tires installed on a black, Cadillac Escalade, the store manager of the Discount Tire store called the Arvada Police Department (the "APD"). The manager was concerned that Mr. Shortridge would not pay for the tires. (**# 68 at 4, 9-10; # 155-1 at 1**). He described Mr. Shortridge as an African-American man, wearing a blue jacket and a Dallas Cowboys hat. (**# 68 at 9-10; # 155-1 at 1**). Shortly thereafter, APD Officer Brownlow and APD K-9 Officer Delay responded to the Discount Tire store. (**# 68 at 9; # 155-1 at 1**). Mr. Shortridge was the only customer present who met the store manager's description. (**# 68 at 11, 19, 20-21; # 155-1 at 1**).

### Mr. Shortridge's Verified Allegations

In his Third Amended Complaint, Mr. Shortridge alleges that Officer Brownlow followed him into the Discount Tire parking lot where Officer Delay was waiting with his police dog. (**# 68 at 13**). As Mr. Shortridge approached the vehicle, the officers confronted him with their service weapons drawn. (**# 68 at 13**). Officer Brownlow advised him that that the Cadillac Escalade had been reported stolen. (**# 68 at 13**). Mr. Shortridge responded that he had a bill of sale for the vehicle and offered to retrieve it from inside the car, but Officer Brownlow threatened to shoot him if he touched the car. (**# 68 at 13**). According to the Complaint, Mr. Shortridge made no aggressive or threatening movements and immediately placed his hands in the air and backed away from the vehicle. (**# 68 at 13**). Mr. Shortridge again requested to show the officers documentation that he owned the vehicle when both officers tackled him and slammed him onto the asphalt surface. (**# 68 at 14**). Mr. Shortridge fell onto the pavement injuring his right shoulder and knocking out his front tooth. (**# 68 at 14**). Mr. Shortridge landed

on his stomach with both officers on top of him. The dog was also entangled in the scuffle and pinned under the officers next to Mr. Shortridge. **(# 68 at 14)**. Mr. Shortridge called for assistance from onlookers and cried out that he was not resisting. **(# 68 at 14-15)**. Officer Delay responded to Mr. Shortridge's pleas by telling him to "Shut up," "Stop crying," and "Take it like a man." **(# 68 at 15)**. Officer Brownlow dragged Mr. Shortridge by his leg to a new location approximately 30 or 40 feet away, then tased him two or three times in the shoulder while Mr. Shortridge was positioned on his hands and knees. **(# 68 at 15-16)**. The assault continued for approximately 10 minutes until another APD officer arrived on the scene. **(# 68 at 14)**. At this point, Mr. Shortridge gave up his hands, and Officer Brownlow and Officer Delay applied handcuffs. **(# 156-4 at 81:5-20)**. The police dog bit Mr. Shortridge multiple times, causing injury to his right hand and left leg. **(# 68 at 16; #156-6 at 82:1-9)**. Mr. Shortridge alleged that Officer Delay commanded the dog to attack him. However, in his deposition testimony, he admitted that he does not know why the dog bit him and cannot recall what was said by Officer Delay. **(# 68 at 16; # 156-6 at 82; # 156-8 at 83)**.

In his Complaint, Mr. Shortridge contends that at no time did he resist the officers, assault them or refuse to follow their orders. **(# 68 at 13-16)**. Due to his injuries, he was transported by ambulance to a hospital for treatment before being transported to jail. **(# 68 at 16-19)**.

**The Officers' Evidence that is Inconsistent with Mr. Shortridge's Allegations**

According to Officer Brownlow's Affidavit in Support of Warrantless Arrest, Mr. Shortridge told Officer Brownlow that the Cadillac belonged to a friend and then "ignored commands" to stay away from the vehicle, get on the ground, and stop resisting. **(# 155-1 at 2)**. As the officers attempted to arrest Mr. Shortridge for aggravated motor vehicle theft, in violation

4

of Colorado law, he dropped to the ground on top of the police dog – causing injuries to the dog – and then moved to his hands and knees and refused to give up his hands. **(# 155-1 at 2)**. Mr. Shortridge continued resisting for a period of time, and the officers realized their efforts to secure Mr. Shortridge's hands were not working. So, Officer Brownlow "delivered multiple knee strikes to [Mr. Shortridge's] common peroneal in an attempt to get him onto his stomach and off of his knees, where he maintained a defensive stance." **(# 155-1 at 2)**. Because Mr. Shortridge continued to resist and refused to lay on his stomach, Officer Brownlow again kneed Mr. Shortridge to no avail. Officer Brownlow then applied a Taser to Mr. Shortridge's bare shoulder. Mr. Shortridge lowered himself onto his stomach momentarily but then regained his position on his hands and knees. Officer Brownlow deployed his Taser once again, and Mr. Shortridge went to his stomach and held out his hands and allowed the officers to apply restraints. **(# 155-1 at 2)**.

**Unrebutted Evidence Submitted by the Officers**

Before encountering Mr. Shortridge, the officers spoke to the Discount Tire employee, who advised them that Mr. Shortridge was "acting suspicious and digging around inside of his vehicle attempting to find cash so he could pay for the tires he had put on the vehicle." **(# 155-1 at 1)**. Another Discount Tire employee located a license plate for the black Cadillac Escalade, and when Officer Brownlow contacted dispatch to run the license plate, dispatch confirmed that the black Cadillac had been reported stolen in Denver. **(# 155-1 at 1)**.

After his arrest, Mr. Shortridge was prosecuted in Jefferson County and charged with ten criminal offenses. **(# 155 at 3-4)**. On March 13, 2017, Mr. Shortridge pleaded guilty to Obstruction of a Peace Officer, a violation of Colo. Rev. Stat. § 18-8-104, and other crimes. At the plea hearing, the court asked for a factual basis for the plea, and Mr. Shortridge stipulated that the facts recited by the prosecutor were accurate. **(# 155-5 at 19:10-19)**. They were:

> The offense took place on November 18, 2016 at the Discount Tire in Arvada, Jefferson County. Defendant went into Discount Tire for service. The individuals working there began to be suspicious that the defendant was going to leave without paying for service. Law enforcement was called. It was then found that the vehicle he had in his possession was reported stolen. They attempted to place him into custody. He began ignoring orders to be put in custody and began to resist. During that, he did land on top of the – one of the service dogs, which is the basis of the restitution issue. They found methamphetamine, three individual baggies on his person . . . and in the vehicle they also found six $50 bills that were determined to be counterfeit as well as some paraphernalia for use.

**(# 155-5 at 18:18-19:9)**.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## **ANALYSIS**

At the outset, the Court notes that the legality of Mr. Shortridge's arrest is not at issue. Instead, the sole claim is that APD Officers Brownlow and Delay violated Mr. Shortridge's constitutional rights by using excessive force in arresting him. To prevail on this claim, Mr. Shortridge must show that Officer Brownlow and Officer Delay used force that was objectively excessive in light of the facts and circumstances confronting them. *Casey v. City of Federal Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007). The precise question in an excessive force case is whether the officer's actions were "objectively reasonable" in light of the facts and

circumstances, without regard to his or her underlying intent or motivation. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Reasonableness is evaluated under a totality of the circumstances approach. Among factors to consider are the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officer or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396.

### A. Officer Brownlow's Motion for Summary Judgment

Although Officer Brownlow raises a number of arguments, it is necessary only to address his contention that Mr. Shortridge's excessive force claim asserted is barred under the reasoning announced in *Heck v. Humphrey*, 512 U.S. 477 (1994). Officer Brownlow argues that Mr. Shortridge's guilty plea in the state criminal action to obstruction of a peace officer was premised upon facts inconsistent with those alleged in this action, and that if there was a judgment in favor of Mr. Shortridge on the excessive force claim, such judgment would be inconsistent with the criminal conviction and imply its invalidity. **(# 155)**. The Court agrees.

In *Heck*, the Supreme Court held that a §1983 action seeking damages was not cognizable if a favorable decision in that action would necessarily imply the invalidity of a valid criminal conviction or sentence. *Heck,* 12 U.S. at 486–87. The Tenth Circuit has applied this rule to excessive force claims asserting a violation of Fourth Amendment rights. *See Havens v. Johnson*, 783 F.3d 776 (10th Cir. 2015).

An excessive-force claim is not automatically or necessarily inconsistent with a plaintiff's criminal conviction for assaulting the officer who is alleged to have used excessive force. *Id.* at 782–83. In such a circumstance, a court must compare the plaintiff's factual allegations to the facts necessary to the criminal offense of which he has been convicted. *Id.* For the excessive force claim to be barred, the facts necessary for the plaintiff to prevail on the

8

excessive-force claim must be inconsistent with the facts necessary to the criminal conviction. Stated another way — Mr. Shortridge's excessive force claim is barred if the only way he can prevail on it is upon a finding of facts that are inconsistent with his conviction for Obstruction of a Peace Officer under of Colo. Rev. Stat. § 18-8-104.

The Third Amended Complaint alleges that Mr. Shortridge did nothing that reasonably required Officers Brownlow or Delay to use force in arresting him. It alleges that without justification, Officers Brownlow and Delay drew their weapons and Officer Brownlow threatened to shoot him if he touched the vehicle. **(# 68 at 13)**. It further alleges that Mr. Shortridge immediately complied, placing his hands in the air and backing away from the vehicle. **(# 68 at 13)**. Notwithstanding such compliance, and repeated statements that Mr. Shortridge was not aggressive but instead, "non-resistant and compliant" **(# 68 at 16),** the officers tackled him and Officer Brownlow kneed him, dragged him across the pavement and repeatedly assaulted him. **(# 68 at 14-16)**.

These facts are inconsistent with those that are essential to proving the crime of Obstruction of a Peace Officer. Such offense requires proof that "[a] person …using or threatening to use violence, force, physical interference … knowingly obstructs, impairs, or hinders the enforcement of the … law or … by a peace officer, acting under color of his or her official authority …" Colo. Rev. Stat. § 18-8-104. In pleading guilty to this charge, Mr. Shortridge admitted that he used or threatened to use violence or force to obstruct Officer Brownlow's and Officer Delay's attempts to take him into custody. Indeed, the very facts that he admitted at the plea hearing are inconsistent with his allegations in this action:

> They attempted to place him into custody. He began ignoring orders to be
> put in custody and began to resist. During that, he did land on top of
> the – one of the service dogs, which is the basis of the restitution issue.

9

**(# 155-5 at 18:18-19:9)**.

This action is akin to *Havens*. *Havens* involved allegations that the plaintiff did nothing wrong but was viciously attacked for no reason. However, the Tenth Circuit found Mr. Havens' guilty plea to attempted first-degree assault of an officer "incompatible with his § 1983 claim [for excessive force]." Consequently, the Court determined that the excessive force claim must be barred in its entirety "because the theory of the claim is inconsistent with the prior conviction." *Id.* (citing *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656 (5th Cir. 2007)).

Here, Mr. Shortridge claims he immediately and consistently complied and cooperated with the officers and did nothing to obstruct the officers' attempt to take him into custody which is inconsistent with his plea to Obstruction of a Peace Officer. Were Mr. Shortridge to prevail on his claim, the findings that he did nothing to require the officers' use of force would imply invalidity of the conviction to which he has pled. Accordingly, his excessive-force claim against Officer Brownlow is barred, requiring its dismissal.

### B. Officer Delay's Motion for Summary Judgment

Officer Delay argues Mr. Shortridge cannot make a *prima facie* showing on his claim of excessive force, and that even if he can produce sufficient evidence to support such claim, that Officer Delay is entitled to qualified immunity. Because the qualified immunity analysis itself involves an assessment of whether a plaintiff has come forward with sufficient evidence to show a *prima facie* claim, the Court starts there.

The doctrine of qualified immunity protects individual state actors from civil liability if their conduct "does not violate clearly established statutory or constitutional right of which a reasonable person would have known." *Messerschmidt v. Millender*, 132 S.Ct. 1235, 1244 (2012). When a defendant raises a qualified immunity defense, the burden shifts to the plaintiff

to satisfy a two-part test.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009).  A plaintiff must show that (1) he or she had a constitutional right that was infringed (the "violation prong"), and (2) such right was clearly established at the time of the alleged infringement (the "clearly established prong").  Although a plaintiff must ultimately establish both elements to avoid application of the doctrine, the Court has discretion to consider the elements in any order.  *See Pearson v. Callahan*, 555 U.S. 223 (2009); *Green*, 574 F.3d. at 1299.

In this case, the Court begins with the first prong – was there a constitutional violation?  If Mr. Shortridge cannot make a *prima facie* evidentiary showing that excessive force was used by Officer Delay, then the Court need not reach the second prong of the qualified immunity analysis.

As previously noted, in order to prove a claim of excessive force under § 1983, Mr. Shortridge must show that Officer Delay used an objectively unreasonable amount of force. *Casey*, 509 F.3d at 1281, *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008).  This requires him to show that Officer Delay's actions were "objectively unreasonable" in light of the facts and circumstances, without regard to his underlying intent or motivation.  *Graham*, 490 U.S. at 397.  The "reasonableness" of using particular force is judged from the perspective of a reasonable officer on the scene, rather than with the benefit of hindsight, and because police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving, the reasonableness of the officer's belief as to the appropriate level of force is judged from an on-scene perspective.  *Saucier*, 533 U.S. at 205.  The Court considers (i) the severity of the crime at issue; (ii) whether the suspect posed an immediate threat to the safety of the officer or others; and (iii) whether the suspect was

actively resisting arrest. *Graham*, 490 U.S. at 396.

Mr. Shortridge's claim against Officer Delay has two components. First, the Third Amended Complaint alleges that Mr. Shortridge was injured when Officer Delay (assisted by Officer Brownlow) forced him to the ground and restrained him while Officer Brownlow assaulted him. **(# 68 at 14-15)**. Second, the Third Amended Complaint contends that Officer Delay ordered his police dog to bite Mr. Shortridge. **(# 68 at 16)**.

As noted earlier, the Court ordinarily takes the verified allegations in the Third Amended Complaint as establishing facts, but here, Mr. Shortridge has also testified during the course of his deposition in elaboration of those allegations and Officer Delay has submitted evidence to which Mr. Shortridge has not rebutted. As to the deposition testimony, the Court considers whether it contradicts the allegations in the Third Amended Complaint or adds clarifying information. As to the unrebutted evidence, the Court treats it as true.

The Affidavit in Support of Warrantless Arrest **(# 156-1)** sets out that before encountering Mr. Shortridge, the officers knew that 1) Mr. Shortridge's vehicle was a black Cadillac Escalade that bore no license plates but was associated with a license plate number of a black Cadillac that had been reported stolen in Denver and 2) the estimated value of the Cadillac was more than $20,000. Based on this, the officers reasonably believed that they had probable

12

cause[5] to arrest Mr. Shortridge for aggravated motor vehicle theft, a Class 5 felony.[6] (**# 156-1**). Based on this belief, it is undisputed that Officer Brownlow informed Mr. Shortridge that his vehicle had been reported stolen and ordered Mr. Shortridge to stay away from the vehicle. (**# 68- at 3, # 156-1**). The Third Amended Complaint alleges in conclusory fashion that Mr. Shortridge was compliant with all of the officers' orders (**# 68 at 13**), but his deposition testimony was more specific. He testified that after Officer Brownlow informed him that the vehicle was stolen and commanded him to stay away from the car, he reached for the driver's side door two separate times. (**# 156- 2 at 71:5-25**). Further, at his change of plea hearing, Mr.

---

[5] "To determine whether an officer had probable cause to arrest an individual, [courts] examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quotations and citations omitted). Probable cause exists where, under the totality of the circumstances, the officer had "a reasonable ground for belief of guilt" that is "particularized with respect to the person to be searched or seized." *Id.* The "probable cause" standard is incapable of precise definition or quantification because it deals with probabilities and depends upon the totality of the circumstances. *Id.* Generally, probable cause for an arrest exists when the "facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Mink v. Knox*, 613 F.3d 995, 2010 WL 2802729 (10th Cir., July 10, 2010) (citing *Bowling v. Rector*, 584 F.3d 956, 969 (10th Cir. 2009)).

Here, the operative statute is: "(2) A person commits aggravated motor vehicle theft in the first degree if he or she knowingly obtains or exercises control over the motor vehicle of another without authorization or by threat or deception. … (3) Aggravated motor vehicle theft in the first degree is a: (a) Class 5 felony if the value of the motor vehicle or motor vehicles involved is less than twenty thousand dollars. … (4) A person commits aggravated motor vehicle theft in the second degree if he or she knowingly obtains or exercises control over the motor vehicle of another without authorization or by threat or deception and if none of the aggravating factors in subsection (2) of this section are present. Aggravated motor vehicle theft in the second degree is a: (a) Class 5 felony if the value of the motor vehicle or motor vehicles involved is twenty thousand dollars or more." Colo. Rev. Stat. § 18-4-409.

[6] Mr. Shortridge makes no arguments that the arrest was illegal and the record contains no such evidence.

Shortridge admitted that (1) the vehicle he was associated with was reported stolen and (2) as the officers attempted to take him into custody, he ignored orders to be put in custody and resisted arrest. **(# 155-5 at 18:18-19:9)**.

The Third Amended Complaint alleges that Officer Delay (with Officer Brownlow) "tackled" him, "slamming him onto the asphalt parking lot", which caused injuries to his shoulder, and that after doing so, Officer Delay restrained him while Officer Brownlow assaulted him. **(# 68 at 14)**. There are no allegations that Officer Delay struck Mr. Shortridge, and Mr. Shortridge essentially recanted his allegation that Officer Brownlow unlawfully assaulted him in conjunction with his guilty plea. This leaves the pertinent allegations that Officer Delay forced Mr. Shortridge to the ground and held him there.

Taking those allegations as true, the Court cannot find that Mr. Shortridge has come forward with sufficient evidence to establish that the force used by Officer Delay was objectively unreasonable. Officer Delay (and Officer Brownlow) were arresting Mr. Shortridge for a severe crime – felony auto theft. *See Henry v. Storey*, 658 F.3d 1235, 1239 (10th Cir. 2011) (determining motor vehicle theft, a felony, is a serious crime). Mr. Shortridge admitted that he was instructed to stay away from the vehicle and that contrary to such instruction he reached for the driver's side door of the vehicle. Such behavior would reasonably give rise to safety concerns that Mr. Shortridge was armed or had a weapon in the vehicle.[7] *Id.* ("a driver caught with a stolen vehicle has strong incentive to evade arrest, given the seriousness of the crime."). In addition, the incident occurred in the auto repair shop parking lot in the early evening during business hours, making public safety a reasonable concern. Given the totality of the

---

[7] Indeed, Mr. Shortridge admitted at his deposition that he had an object inside the vehicle that could have been used as a weapon. **(# 155-3)**.

circumstances, the Court cannot find the allegation that Officer Delay forced Mr. Shortridge to the ground and held him there establishes that the force Officer Delay used was objectively unreasonable.

The Third Amended Complaint also alleges that once he was handcuffed, Officer Delay "issued a command" to his police dog, "who immediately began to repeatedly bite and attack" him. **(# 68 at 16)**. The Third Amended Complaint does not allege that a particular command (verbal or non-verbal) was given, and during his deposition Mr. Shortridge testified that he had no personal knowledge that Officer Delay directed the dog to bite him and did not know why the dog bit him. **(# 155-6 at 82)**. Rather, Mr. Shortridge assumed that Officer Delay must have issued a command to the dog to bite him "[b]ecause the dog was just running around during the whole time. So, if there was any, like, viciousness in the dog when I was on the ground on my hands and knees, he would have bit me already." **(# 156-8 at 83:22-25)**. Taking the allegation in the Third Amended Complaint as true, it is apparent that it is premised upon Mr. Shortridge's speculation and thus is not competent evidence. It is fair to say that the dog bit Mr. Shortridge, but there is no evidence that Officer Delay commanded it to do so.

Accordingly, the Court finds that Mr. Shortridge has not come forward with sufficient evidence to establish that Officer Delay used excessive force. As a consequence, he is entitled to qualified immunity and the claim is dismissed.

## CONCLUSION

**It is therefore Ordered that:**

- Officer Kraig Brownlow's Motion for Summary Judgment **(# 155)** is **GRANTED**, and the claim against him is **DISMISSED.**

- Officer William Delay's Motion for Summary Judgment **(# 156)** is **GRANTED**. He is entitled to qualified immunity, and thus the claim against him is **DISMISSED.**
- The Clerk of the Court shall close this case.

Dated this 8th day of May, 2020.

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
Senior United States District Judge